# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2023-KA-00788-COA

**DAVID LEE STAR A/K/A DAVID STAR**                    **APPELLANT**

**v.**

**STATE OF MISSISSIPPI**                                        **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 06/22/2023 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: MOLLIE MARIE McMILLIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ASHLEY LAUREN SULSER |
| DISTRICT ATTORNEY: | PATRICIA A. THOMAS BURCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND RENDERED IN PART - 02/25/2025 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**McDONALD, J., FOR THE COURT:**

¶1.     David Lee Star appeals from a Forrest County Circuit Court jury conviction of aggravated assault, possession of a weapon by a felon, and tampering with evidence. For aggravated assault, the circuit court sentenced Star to twenty years in the custody of the Mississippi Department of Corrections, with ten years to serve and ten years suspended, and five years of post-release supervision. For possession of a weapon by a felon, the court sentenced Star as a non-violent habitual offender to concurrently serve ten years without

eligibility for parole, probation, or early release.[1]

¶2.    On appeal, Star argues that the indictment and evidence presented at trial for the charge of possession of a weapon by a felon failed to include and prove an essential element of the crime (the type of knife he allegedly possessed), warranting reversal of his conviction and sentence on that offense. He further argues that the jury was not properly instructed on the charge of aggravated assault and the possession of a weapon by a felon. Because the State concedes and because the law supports Star's argument that the indictment and evidence presented on Count II (possession of a weapon by a felon) was deficient and insufficient, we reverse Star's conviction and render judgment dismissing Count II of the indictment. However, we affirm his conviction and sentence on the charge for aggravated assault.

**Facts**

¶3.    In the late evening of August 3, 2022, Star and his girlfriend Sara Latham, who were both homeless, purchased a bottle of whiskey, and went to Veterans Memorial Park in Hattiesburg to drink. According to Latham, as they finished the bottle, they discussed their relationship. Latham said she told Star that she did not want him as a boyfriend anymore, and Star asked for a last hug. When Star held her, Latham felt "something hot running down the side of her neck and blood spurted out." Star had stabbed her multiple times in the head and on the arm. Star became frantic, threatening to kill her, and Latham ran into the street to flag down a car for help. She left her purse, wallet, and identification at the scene.

---

[1] Star does not challenge his conviction or ten-year sentence for the charge of tampering with evidence.

2

¶4. A passing motorist called 911, and the fire department arrived first and started treating Latham. Law enforcement responded as well, obtained some basic facts from Latham, and went to the park, where they identified the scene by all the blood and Latham's personal items. Star was not there. Latham was treated at a local hospital for serious stab wounds. Latham told police that she did not see what Star had used to stab her because it was dark. Although she had a pocket knife in her purse, she said she did not use it that night.

¶5. Star was arrested the next day and waived his *Miranda*[2] rights. He initially told police that he had not seen Latham in a couple of weeks. But then he admitted that he had seen her the night before and that they had had a verbal altercation in the park. Star said Latham slapped him and sprayed him with pepper spray. He said he pulled out a knife and started blindly swinging because he thought Latham had a box cutter. Star knew he had injured her, but he left the park and threw the knife away. The knife Star used was never found.

*The Indictment*

¶6. On February 17, 2023, Star was indicted on three counts: aggravated assault in violation of Mississippi Code Annotated section 97-3-7(2) (Rev. 2020) (Count I),[3]

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[3] Mississippi Code Annotated section 97-3-7(2)(a) provides:

A person is guilty of aggravated assault if he or she (i) attempts to cause serious bodily injury to another, or causes such injury purposely, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life; (ii) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or (iii) causes any injury to a child who is in the process of boarding or exiting a school bus in the course of a violation of Section 63-3-615; and, upon conviction, he or she shall be

3

possession of a weapon by a felon in violation of Mississippi Code Annotated section- 97-37-5 (Supp. 2021) (Count II),[4] and tampering with the evidence in violation of Mississippi Code Annotated section 97-9-125 (Rev. 2020) (Count III).[5] The indictment in Count II read that

> David Lee Star . . . on August 3, 2022, did knowingly, willfully, unlawfully and feloniously possess a weapon to-wit: a knife, at a time when he the said David Lee Star, had previously been convicted of Burglary, a felony, on November 19, 1985 in the Circuit Court of Jones County, Mississippi, Cause No. 6189, contrary to the form of the statute in such cases made and provided, and against the peace and dignity of the State of Mississippi.

Because he had previously been convicted of two felonies,[6] Star was also charged as a

---

punished by imprisonment in the county jail for not more than one (1) year or sentenced to the custody of the Department of Corrections for not more than twenty (20) years.

[4] Mississippi Code Annotated section 97-37-5(1) states:

It shall be unlawful for any person who has been convicted of a felony under the laws of this state, any other state, or of the United States *to possess* any firearm or *any bowie knife, dirk knife, butcher knife, switchblade knife*, metallic knuckles, blackjack, or any muffler or silencer for any firearm unless such person has received a pardon for such felony, has received a relief from disability pursuant to Section 925(c) of Title 18 of the United States Code, or has received a certificate of rehabilitation pursuant to subsection (3) of this section.

(Emphasis added).

[5] Mississippi Code Annotated section 97-9-125(1)(a) provides:

(1) A person commits the crime of tampering with physical evidence if, believing that an official proceeding is pending or may be instituted, and acting without legal right or authority, he:
(a) Intentionally destroys, mutilates, conceals, removes or alters physical evidence with intent to impair its use, verity or availability in the pending criminal investigation or prospective official proceeding[.]

[6] In addition to the 1985 burglary conviction, the indictment recited that Star was

habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2020).[7]

*The Trial*

¶7.     Star was tried on May 4, 2023.  He stipulated that he had two previous felony convictions.  The State called Austin Super, the Hattiesburg police officer who responded to the 911 call that night, who testified that when he arrived downtown, he found members of the fire department treating Latham.  She was covered in blood but able to tell him what had happened.  Super instructed a trainee patrolman, Officer Payne, who was riding with him, to go to the park and locate the scene, which Payne did.  At trial, Super identified Payne's body-camera footage from that night, which was entered into evidence and played for the jury.  The officers also took photographs of Latham's injuries at the scene that Super identified and were entered into evidence.

¶8.     Latham also testified about the events that night as described above.  She identified photographs taken of her at the hospital, which were entered into evidence.  She denied

---

also convicted of possession of a weapon by a felon on April 1, 2016, for which he had been sentenced to serve a term of seven years in custody.

[7] Mississippi Code Annotated section 99-19-81 provides:

> Every person convicted in this state of a felony who shall have been convicted twice previously of any felony or federal crime upon charges separately brought and arising out of separate incidents at different times and who shall have been sentenced to separate terms of one (1) year or more in any state and/or federal penal institution, whether in this state or elsewhere, shall be sentenced to the maximum term of imprisonment prescribed for such felony unless the court provides an explanation in its sentencing order setting forth the cause for deviating from the maximum sentence, and such sentence shall not be reduced or suspended nor shall such person be eligible for parole or probation.

hitting Star, spraying him with pepper spray, or using a box cutter on him.

¶9. The State also called Detective Lashunda Buckhalter, who had interrogated Star upon his arrest. She explained that Star kept changing his story. At first, he said that he had not seen Latham, but then he admitted he had been with her that night in the park. Then he said that Latham had slapped him and that she had pepper spray as well. He claimed she also pulled a box cutter on him, so he took out his knife and started swinging. Buckhalter took nineteen photos of Star's face, head, torso, and other areas, which were entered into evidence. None showed any cuts or bruises on Star's body. Buckhalter continued, saying that Star said when he saw Latham was hurt, he left the park. Moreover, later in the interview, Buckhalter said Star admitted that Latham never came at him in a threatening way. Based on her eleven years of training and experience, Buckhalter felt Star was being deceptive.

¶10. After these three witnesses testified, the State rested. Star moved for a directed verdict, and the court denied the motion. During a break, the court reviewed the jury instructions with the parties, and the defense had no objection to any of those the State had proposed and the court accepted. After the break, Star informed the court that he would not testify. The defense had no other witnesses and rested.

¶11. After being instructed and hearing closing arguments, the jury retired to deliberate and returned a verdict of guilty of all three counts.

*Sentencing*

¶12. On June 22, 2023, the circuit court sentenced Star to twenty years in MDOC's

6

custody, with ten years suspended and ten years to serve, and five years of post-release supervision for the aggravated assault conviction. The court sentenced him to concurrently serve ten years without eligibility for parole, probation, or early release for the conviction of possession of a weapon by a felon.

*Post-trial Motions*

¶13.    On July 3, 2023, Star filed a motion for judgment notwithstanding the verdict, citing as grounds the failure of the court to dismiss Count II of the indictment. Specifically, Star contended that the State failed to make a prima facie case of possession of a weapon by a felon because the State failed to identify the weapon, as required by the statute.

¶14.    On July 6, 2023, Star filed an amended motion for judgment notwithstanding the verdict, repeating almost verbatim the allegations of his original motion. That same day, the circuit court heard arguments on Star's motions and denied them.

*Appeal*

¶15.    Star appealed on July 14, 2023. He raises the following issues: (a) whether the indictment charging him with possession of a knife by a felon failed to allege an essential element of the crime, i.e., a description of the knife, (b) whether the evidence was sufficient to convict him of the possession-of-a-weapon charge because the State did not prove the type of knife Star possessed, (c) whether the jury instructions on the counts of aggravated assault and felon in possession of a weapon were deficient and did not instruct the jury on the elements of the crimes.[8] In response, the State agrees that Star's conviction of possession of

---

[8] As stated, Star raises no issue regarding his tampering-with-evidence conviction.

a weapon by a felon should be reversed because the type of knife was not identified, but the State contends the conviction for aggravated assault should stand.

## Standard of Review

¶16.　"The question of whether an indictment is defective is an issue of law and therefore deserves a relatively broad standard of review, or de novo review, by this Court." *Douglas v. State*, 378 So. 3d 361, 369 (¶15) (Miss. 2024). "Rulings on jury instructions are reviewed under an abuse of discretion standard." *Barnes v. State*, 389 So. 3d 1086, 1090 (¶11) (Miss. Ct. App. 2024) (citing *Roby v. State*, 183 So. 3d 857, 872 (¶63) (Miss. 2016)).

## Discussion

### I.　Whether Star's conviction of possession of a weapon by a felon should be reversed.

¶17.　Star states three reasons why his conviction for possession of a weapon by a felon should be reversed. First, he argues that the indictment failed to include an essential element of the crime, i.e., the type of knife he allegedly possessed. Second, he argues that the jury instruction on this charge in Count II also failed to identify the type of knife he allegedly had. Third, he contends the proof presented by the State to establish the possession of a weapon by a felon was insufficient to support his conviction of the charge because the State failed to prove the kind of knife he allegedly possessed. Because these issues all deal with the failure to identify the kind of knife that Star allegedly possessed, we combine them into one issue for discussion purposes.

¶18.　When the weapon is a knife, the statute defining the crime of possession of a weapon by a felon is limited to only four specifically named types of knives: *a bowie knife, dirk knife,*

8

*butcher knife, and switchblade knife*. Miss. Code Ann. § 97-37-5(1). In a case directly on point, the Mississippi Supreme Court held "the mere possession of 'a knife' is not a crime under Mississippi Code Section 97-37-5; only possession of those knives enumerated in the statute is a crime." *Thomas v. State*, 126 So. 3d 877, 879 (¶5) (Miss. 2013). In that case, Thomas, a prior convicted felon, was charged with aggravated assault of his girlfriend when he stabbed her with a knife after, according to him, she attacked him. *Id*. at 878 (¶2). Both the indictment and the jury instructions charged Thomas with only possessing "a knife." *Id*. at 879 (¶6). The Supreme Court stated that "[a]n indictment which fails to allege all essential elements of a crime runs afoul of our constitutions and is void." *Id*. Quoting *Spears v. State*, 253 Miss. 108, 116, 175 So. 2d 158, 161-62 (1965), the Court stated, "Repeatedly this Court has held that an indictment based upon a statutory offense must charge all of the essential elements of the statutory crime and is void for failure to do so . . . and that [b]eing a felon in possession of a prohibited weapon is a statutory crime." *Id*. at 879 (¶¶7, 8) (citations omitted). The Court continued:

> Thomas's indictment informed him only that he was accused of possessing a knife at a time when he was a convicted felon. Notwithstanding the vast varieties of knives he could have possessed with impunity, the indictment failed to specify which, if any, of the four types of prohibited knives he was alleged to have possessed. The type of weapon a felon is alleged to have possessed is unquestionably an essential and material element of the crime of being a felon in possession of a prohibited weapon.

*Id*. at 879-80 (¶8). Accordingly, the Supreme Court dismissed the indictment and reversed the conviction of possession of a weapon by a felon. *Id.*

¶19. In this case, Star's indictment for possession of a weapon by a felon similarly charged

9

that he possessed only "a knife" with no further identification of what kind of knife Star possessed. In light of the clear, on-point precedent of *Thomas*, which even the State agrees is applicable, we hold that Star's indictment for possession of a weapon by a felon was defective and did not charge him with a crime. Moreover, the jury instruction was deficient because it too did not identify the type of knife Star possessed and that Star's conviction on this count was not supported by sufficient evidence of an essential element. "In reviewing whether the evidence supporting a jury verdict is legally sufficient, . . . the proper remedy for insufficient evidence is for the Court to reverse and render." *Johnson v. State*, 52 So. 3d 384, 390 (¶14) (Miss. Ct. App. 2009).

¶20. Additionally, because the indictment as written did not charge a crime, yet the case proceeded to the trial and verdict, the indictment cannot now be amended. To add the type of knife Star allegedly possessed would be a substantive change to the indictment, not simply one of form, and is prohibited by Mississippi Code Annotated section 99-7-21 (Rev. 2020).[9] In *Payne v. State*, 282 So. 3d 432, 438 (¶20) (Miss. Ct. App. 2019), this principle led us to reverse a conviction and render judgment dismissing that count in the indictment because it did not charge an essential element. There the indictment charged Payne with possession

---

[9] This section provides:

> All objections to an indictment for a defect appearing on the face thereof, shall be taken by demurrer to the indictment, and not otherwise, before the issuance of the venire facias in capital cases, and before the jury shall be impaneled in all other cases, and not afterward. The court for any formal defect, may, if it be thought necessary, cause the indictment to be forthwith amended, and thereupon the trial shall proceed as if such defect had not appeared.

Miss. Code Ann. § 99-7-21.

of "ethylone," which was not listed in Schedule I of the Controlled Substances Act. *Id.* at (¶14). Citing *Brewer v. State*, 351 So. 2d 535 (Miss. 1977), we held that the indictment in Payne's case was invalid and failed to state a crime. *Id.* at 428 (¶22). We noted that the supreme court in *Brewer* stated that section 99-7-21 only allows amendment of indictments for matters of form and not of substance, and to correct the omission of the type of controlled substance in Payne's indictment would be an improper substantive change. *Id.* at 436-37 (¶16). Because possession of a controlled substance was an essential element of Payne's alleged crime, and because the indictment failed to allege that Payne possessed an enumerated Schedule I controlled substance, we reversed his conviction and rendered a judgment dismissing that count. *Id.* at 438 (¶20). Likewise, in this case, Star's indictment of the charge of possession of a weapon by a felon omitted a necessary element, was invalid, and under section 99-7-21 could not be substantially amended after a jury had been empaneled. Accordingly, we reverse in part and render judgment dismissing Count II of Star's indictment.

II. **Whether the jury instruction on aggravated assault was deficient and did not include essential elements of the crime.**

¶21. Star also argues that the jury instruction given on the aggravated assault charge in Count I failed to include an essential element of the crime, namely language that Star assaulted Latham "with a deadly weapon or other means likely to produce death or serious bodily harm." The State contends that Star waived this issue because he did not object to the instruction and that, notwithstanding the procedural bar, the jury was properly instructed on the elements of the crime.

11

¶22. "A defendant's failure to object to a jury instruction at trial bars that issue on appeal." *Spiers v. State*, 361 So. 3d 643, 654-55 (¶36) (Miss. 2023) (internal quotation marks omitted). The Supreme Court had previously established this principle in *Boyd v. State*, 47 So. 3d 121, 124 (¶10) (Miss. 2010), stating, "To preserve a jury instruction issue on appeal, the defendant must make a specific objection to the proposed instruction to allow the trial court to consider the issue."

¶23. In this case, the record reflects that when the circuit court reviewed the proposed jury instructions with counsel, Star's attorneys said they had no objection to the State's proposed instruction on aggravated assault (S-2). In addition, in his amended motion for judgment notwithstanding the verdict, Star raised no challenge to the aggravated assault instruction. Accordingly, because this issue was not presented to the circuit court, Star is procedurally barred from raising the issue for the first time on appeal.

¶24. Notwithstanding the procedural bar, we find no reversible error with the instruction on aggravated assault that was presented to the jury. The aggravated assault statute 97-3-7(2)(a)(ii) states:

> A person is guilty of aggravated assault if he or she . . . (ii) attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; . . . .

Star's indictment tracked the statute, charging that "David Lee Star . . . on or about August 3, 2022, did knowingly, willfully, unlawfully and feloniously attempt to cause bodily injury to Sarah Latham, with a deadly weapon, to-wit: by stabbing her with a knife, . . . . " The aggravated assault instruction given in Star's case read:

The Defendant, David Lee Star, has been charged in Count I with the crime of Aggravated Assault.

If you find from the evidence in this case beyond a reasonable doubt that:

1) That [on] or about August 3, 2022, in Forrest County, Mississippi;
2) David Lee Star unlawfully attempted to cause serious bodily injury to Sarah Latham;
3) By stabbing her with a knife;

then you shall find the Defendant, David Lee Star, guilty of Aggravated Assault.

If the State has failed to prove any one of more of these elements beyond a reasonable doubt, then you shall find the Defendant not guilty of Aggravated Assault.

¶25. Star argues that this jury instruction failed to require the jury to find beyond a reasonable doubt that the knife was a deadly weapon. In *Boyd*, 47 So. 3d at 123 (¶9), the defendant raised the same argument to a similar aggravated assault instruction, which read:

The Court instructs the Jury that if you find from the evidence in this case beyond a reasonable doubt that on or about March 29, 2008, James Earl Boyd, did unlawfully, willfully, feloniously, purposely, and knowingly cause bodily injury to Wanda Sherrod with a knife, without authority of law and not in necessary self-defense, then you shall find the defendant guilty as charged.

If the State fails to prove any one or more of the above elements beyond a reasonable doubt, then you should find the defendant not guilty.

*Id.* at (¶12). The Supreme Court found that the instruction did not properly instruct the jury because it failed to tell "the jury that in order to convict Boyd of aggravated assault, it must find: (1) that the knife with which Boyd had injured Sherrod is a 'deadly weapon,' or (2) that Boyd had caused Sherrod's injuries by 'other means' likely to produce death or serious

bodily injury." *Id*. at 125 (¶14).

¶26. However, *Boyd* is distinguishable from the case at hand. In Star's case, the circuit court did give the jury a separate instruction (S-8) concerning the knife as a deadly weapon:

> It is a question of fact for you to determine whether the knife claimed to have been used by David Lee Star was a deadly weapon in the manner claimed to have been used in this case.
>
> A deadly weapon may be defined as any object, article, or means which, when used as a weapon under the existing circumstances is reasonably capable of producing or likely to produce death or serious bodily harm to a human being upon whom the object, article or means is used.

Therefore, unlike *Boyd*, the jury was instructed to determine whether the knife was a deadly weapon. It does not matter that this charge was contained in a separate instruction because jury instructions are to be read as a whole. *Pulliam v. State*, 321 So. 3d 1185, 1193 (¶27) (Miss. Ct. App. 2020). "No reversible error exists if the instructions fairly, though not perfectly, announce the law of the case and create no injustice." *Id*. (citing *Ambrose v. State*, 254 So. 3d 77, 146 (¶236) (Miss. 2018)); *see also Watkins v. State*, 101 So. 3d 628, 633 (¶16) (Miss. 2012). "When read together, if the jury instructions state the law of the case and create no injustice, then no reversible error will be found." *Watkins*, 101 So. 3d at 633 (¶16). In addition, even in *Boyd*, the Mississippi Supreme Court held "that no fair-minded and properly instructed jury could fail to find that Boyd's knife was a deadly weapon, and that Boyd's cutting and stabbing Sherrod multiple times was likely to produce serious bodily injury." *Boyd*, 47 So. 3d at 125 (¶14). Accordingly, the Court found no merit to Boyd's jury-instruction argument and affirmed Boyd's conviction. *Id*.

¶27. Similarly, in this case, although the aggravated assault jury instruction itself fails to

require that the jury find the knife to be a dangerous weapon, the jury was instructed on that element in a separate instruction. Moreover, the evidence showed that Star stabbed Latham numerous times in the head, neck, and arm. As the Supreme Court said in *Boyd*, no fair-minded, reasonable jury could fail to find that Star's knife was a deadly weapon that he used to cause serious bodily harm to Latham. Thus, because the instructions, taken as a whole, contained all necessary elements of the crime, we find no merit to Star's argument.

**Conclusion**

¶28. Because the indictment failed to identify the type of knife Star used to assault Latham, the indictment failed to include the elements of possession of a weapon by a felon. For that same reason, the jury instruction for this crime was similarly deficient, as was the State's proof of this crime. Accordingly, we reverse Star's conviction and sentence for the crime of possession of a weapon by a felon and render judgment dismissing Count II of the indictment. However, finding no merit to Star's argument concerning the jury instruction on aggravated assault, we affirm his other two convictions and sentences in this case.

¶29. **AFFIRMED IN PART; REVERSED AND RENDERED IN PART.**

**CARLTON, P.J., WESTBROOKS, LAWRENCE, McCARTY, WEDDLE AND ST. PÉ, JJ., CONCUR. WILSON, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. BARNES, C.J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. EMFINGER, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**