# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-CT-00016-SCT

*TREVIOUN LAMONT CORNELIUS BRIGGS a/k/a*
*T.L. BRIGGS a/k/a T.L. CORNELIUS BRIGGS a/k/a*
*TREVIOUS LAMONT CORNELI BRIGGS a/k/a*
*TREVIOUN LAMOUNT CORNELIUS BRIGGS*
*a/k/a TREVIOUS BRIGGS a/k/a TREVIOUN L.C.*
*BRIGGS a/k/a TREVIOUN BRIGGS*

*v.*

*STATE OF MISSISSIPPI*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 09/29/2014 |
| TRIAL JUDGE: | HON. JOHN HUEY EMFINGER |
| TRIAL COURT ATTORNEYS: | ABRAHAM ROWE |
| | MICHAEL GUEST |
| | BRYAN BUCKLEY |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: JUSTIN TAYLOR COOK |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 07/27/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     Trevioun Briggs was convicted in the Circuit Court of Madison County of robbery and witness-tampering. The Court of Appeals affirmed both convictions in ***Briggs v. State***, 2016 WL 2981728, at *1 (Miss. Ct. App. May 24, 2016). Briggs petitioned this Court for certiorari, which was granted to consider whether his indictment for the witness-tampering count was defective. Finding that the indictment fairly tracked the language of Mississippi Code Section 97-9-115, we affirm the judgment of the Court of Appeals.

**FACTS**

¶2.     Briggs was convicted of robbing a woman in the Northpark Mall parking lot in Ridgeland, Mississippi, on the evening of December 14, 2013. The woman was holding her three-year-old son and loading shopping bags into her car when Briggs approached from behind and struck her in the back of the head, causing her to drop the child. Briggs snatched the shopping bags and ran away. The woman identified her attacker as a black male wearing a red sweatshirt. A few hours later, Briggs was arrested outside the mall after attempting to return stolen items in exchange for a cash refund. After his arrest, an orange sweatshirt and other stolen items were found inside his vehicle. Just before Briggs's arrest, he successfully had returned other stolen items to various mall retailers, and the retailers' employees identified him at trial.

¶3.     Briggs was arrested for false pretense and incarcerated at the Madison County Jail. Four days after his arrest, while in jail, Briggs placed several recorded phone calls to various acquaintances. In the recordings, Briggs requested that the person to whom he was speaking either provide an alibi for the time of the robbery, or ask a third person to do so on his behalf.

On March 28, 2014, Briggs was indicted for robbery and witness tampering. At trial, the State placed the recorded conversations in evidence. The jury found Briggs guilty of robbery and witness-tampering.

## LAW AND ANALYSIS

¶4.     Section 97-9-115 provides:

(1)     A person commits the crime of tampering with a witness if he intentionally or knowingly attempts to induce a witness or a person he believes **will** be called as a witness in any official proceeding to:

(a) Testify falsely or unlawfully withhold testimony; or

(b) Absent himself from any official proceeding to which he has been legally summoned.

Miss. Code Ann. § 97–9–115 (Rev. 2014) (emphasis added).

¶5.     Briggs's indictment used the word "may" instead of the word "will," providing in pertinent part:

[Briggs] did willfully, feloniously, intentionally[,] and knowingly attempt to induce a witness or a person he believed **may** be called as a witness against him, to-wit: [Briggs], while incarcerated, made contact via telephone with a person whom he then requested she attempt to coerce another person into deceitfully providing [Briggs] with . . . an alibi, in violation of Miss. Code Ann. § 97-9-115 . . . .

(Emphasis added.)

¶6.     Briggs's jury was instructed as follows:

If you find from the evidence in this case beyond a reasonable doubt that:

. . .

[Briggs] did willfully, feloniously, intentionally[,] and knowingly attempt to induce a witness or a person he believed **would or could** be called as a witness

3

at the trial of this cause to testify falsely at this trial, an official proceeding, by providing at said trial an alibi for the Defendant by testifying that the Defendant was at a place other than the location of the crime charged . . . at the time the crime was committed, said testimony being false and known by the Defendant to be false, as well as being material to the subject matter of the official proceeding, namely this trial; then you shall find [Briggs] guilty of Tampering with A Witness . . . .

(Emphasis added.)

¶7.    Briggs claimed on appeal that both the indictment and the jury instruction failed to track the statute's language. Briggs submitted that while "it may seem somewhat trivial, the difference between the words 'will,' 'may' and 'would or could' are significant" because all contain "different knowledge requirements." Without explanation as to how or why, Briggs asserted that by use of the word "may" in the indictment, the State broadened the activity for which Briggs could be found guilty under Section 97-9-115. Briggs then contended that by use of the words "would or could" in the jury instruction, the State lessened its burdened from that in the indictment's language.

¶8.    The Court of Appeals found no merit in Briggs's claims. In reaching its conclusion, the Court of Appeals found that "Briggs contacted a woman and asked her to fabricate an alibi for him during the times in which he was not seen on the mall video." *Briggs*, 2016 WL 2981728, at *3. On these facts, the court reasoned that "it makes no difference whether the indictment read 'will' or 'may' or the jury instruction read 'will' or 'would' since the factual basis surrounding the charge, and described in the indictment, dictated that Briggs thought, and in fact hoped, that the woman he contacted would be called as a witness to provide Briggs with the alibi he sought." *Id.*

4

¶9.     We agree.

¶10.    Again, Briggs asserts that use of the word "may" in the indictment broadens the activity for which Briggs could be found guilty under Section 97-9-115. But Briggs does not speak to what activity the statute circumscribes, or how use of the word "will" limits it, or how the word "may" expands it. He merely suggests, given his assertions, that Section 97-9-115 is limited to those persons designated as a witness by some sort of process.

¶11.    That may be a proper interpretation for subsection (b) of the statute based on the language: "Absent himself from any official proceeding *to which he has been legally summoned*." Miss. Code Ann. § 97-9-115(1)(b) (emphasis added). But subsection (b), which simply sets forth another way a person may commit the crime of witness-tampering, is not applicable in this case. Based on the essential facts alleged in the indictment constituting the offense charged, subsection (a) and the language contained in paragraph (1) that precedes it is what applies here.

¶12.    First, this language uses both the terms "witness" and "person" to describe who an offender may not induce or attempt to induce to testify falsely in any official proceeding. This signifies that the statute is not limited to those designated as witnesses by process, as Briggs suggests, but applies also to those so regarded by fact or circumstance. *See, e.g.*, **State v. Crider**, 21 Ohio App. 3d 268, 487 N.E.2d 911, 912 (1984) (holding same for purposes of Ohio's witness-tampering statute, based on the dictionary definition of the term "witness," which refers to "one that is cognizant of something by direct experience" or "one who beholds or otherwise has personal knowledge of something").

5

¶13.     Second, the word "attempt" is contained in the statute. This means the offender need not succeed or actually induce the witness or person to testify falsely for purposes of subsection (a); he or she need only attempt to induce the witness or person to do so. Thus, whether that person is ever called to testify in any official proceeding is irrelevant for purposes of subsection (a).

¶14.     Third, the phrase "any official proceeding" used in paragraph (1) is broadly inclusive, unlike its usage in subsection (b), which by the phrase "to which he has been legally summoned," limits its application to circumstances in which an official proceeding is pending. For purposes of subsection (a), however, there is no express limitation. Thus, we read "any official proceeding" used in paragraph (1) to mean potential future proceedings.

¶15.     The Oregon Supreme Court reached the same conclusion when construing that state's witnessing-tampering statute, which is very similar to ours but uses the word "may" instead of the word "will." *See **Oregon v. Bailey***, 213 P.3d 1240 (Or. 2009) (interpreting ORS 162.285(1)).[1]  The ***Bailey*** court concluded that its statute does not require that an official

---

[1] Oregon's witness-tampering statute states:

A person commits the crime of tampering with a witness if:

> (a) The person knowingly induces or attempts to induce a witness or a person the person believes may be called as a witness in any official proceeding to offer false testimony or unlawfully withhold any testimony; or

> (b) The person knowingly induces or attempts to induce a witness to be absent from any official proceeding to which the person has been legally summoned.

ORS 162.285(1).

6

proceeding be pending at the time "tampering" conduct occurs. This is because, for purposes of subsection (a), contained in ORS 162.285, there is no express time limitation in reference to "any official proceeding." *Id*. at 1243. This, according to *Bailey*, must mean that any "potential future proceedings [are included] within its sweep." *Id*. The *Bailey* court further concluded that, not only need an official proceeding not be pending for purposes of ORS 162.285(1)(a); an investigation that might be conducted in the case need not yet be underway either. *Id*. at 1246-47.

¶16. We also point out that Alabama has a similar obstruction-of-justice chapter in its criminal code with provisions almost identical to ours. Its witness-tampering statute reads:

> (a) A person commits the crime of tampering with a witness if he attempts to induce a witness *or a person he believes will be called as a witness in any official proceeding* to:
>
> > (1) Testify falsely or unlawfully withhold testimony; or
> >
> > (2) Absent himself from any official proceeding to which he has legally been summoned.

Ala. Code Ann. § 13A-10-124.

¶17. In *Ivey v. State*, 821 So. 2d 937, 950 (Ala. 2001), *overruled on other grounds*, the Alabama Supreme Court concluded that "Section 13A-10-124 does not require that the false testimony or the withholding of testimony be carried out in order for the charge of witness tampering to be complete."

¶18. In *Barnette v. Alabama*, 855 So. 2d 1129 (Ala. Crim. App. 2003), the Court of Criminal Appeals of Alabama addressed its witness-bribery statute, which, similar to Mississippi's witness-bribery statute, reads in pertinent part: "A person commits the crime

7

of bribing a witness if he offers, confers or agrees to confer anything of value upon a witness *or a person he believes will be called as a witness in any official proceeding* to . . . [c]orruptly influence the testimony of that person . . . ." *See* Ala. Code Ann. § 13A-10-121.[2]

¶19.    In ***Barnette***, a few days following an incident involving a sexual assault of a fourteen-year-old, which had been reported to the police, an acquaintance of the alleged perpetrator called the victim's stepfather and offered him money to persuade the victim to "tell the police that the [incident] didn't happen." ***Barnette***, 855 So. 2d at 1130.  The acquaintance later was charged and convicted of bribing a witness.  On appeal, the defendant claimed there was insufficient evidence to support his conviction because the State did not prove the victim or the stepfather was a witness in an official proceeding, or that an official proceeding had commenced at the time the bribery took place.  ***Id***. at 1134.

¶20.    In affirming the conviction, the Alabama Court of Appeals found the fact that an official proceeding had not yet begun to be of no moment.  ***Id***.

> Based on the evidence . . . presented, the jury could have reasonably concluded that, even though there was not any official proceeding pending at the time of the appellant's actions, the appellant believed an official proceeding would be initiated and believed [the victim and/or her step-father] would be called as a witness in that proceeding.

***Id***. at 1134-35.

---

[2] Compare with Miss. Code Section 97-9-109 (Rev. 2014), which states:

> A person commits the crime of bribing a witness if he intentionally or knowingly offers, confers or agrees to confer any benefit upon a witness *or a person he believes will be called as a witness in any official proceeding* with intent to . . . [i]nfluence the testimony of that person . . . .

¶21.    The dissent agrees that an official proceeding need not be commenced or pending when the inducement of false testimony is attempted, but contends, however, that the State nonetheless expanded upon the statutory definition of the crime by substituting the word "will" for the word "may."  And by this substitution, according to the dissent, the State made the charge easier to prove.  But other than pointing out that the two words can have different meanings, the dissent–like Briggs–fails to explain how use of the word "may" instead of "will" expands upon the conduct Section 97-9-115(1)(a) prohibits, or how its use prejudiced Briggs in any defense he may have had against the charge.

¶22.    Again, there is no requirement that an offender succeed in his or her attempt to induce another to testify falsely in any potential official proceeding.  Nor is there an "inevitability" requirement as the dissent contends the statute contains.  Were there such, the offense would not be consummated until the putative witness appeared at the official proceeding and gave false testimony.  But that is not the intent of the statute.  Its clear purpose is to protect not only those designated as witnesses by process, but those who may become witnesses due to circumstances such as those alleged in Briggs's indictment.

¶23.    In any such case, there always exists the possibility (or contingency) that the person the offender attempted to induce to give false testimony might not be called as a witness to testify in an official proceeding.  That is factually what occurred here.

¶24.    For all intents and purposes, use of the word "may" in this instance was merely grammatical.  Its use was inconsequential, and it did not alter the substantive meaning of the

9

statute or disadvantage Briggs in any defense(s) he may have had in the case. We also find the same with regard to the complained-of jury instruction.

## CONCLUSION

¶25. Briggs's convictions for witness-tampering and for robbery are affirmed.

¶26. **AFFIRMED.**

**WALLER, C.J., AND RANDOLPH, P.J., CONCUR. MAXWELL AND CHAMBERLIN, JJ., CONCUR IN PART AND IN RESULT WITHOUT SEPARATE WRITTEN OPINION. KITCHENS, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J., KING AND COLEMAN, JJ.**

**KITCHENS, JUSTICE, CONCURRING IN PART AND DISSENTING IN PART:**

¶27. I respectfully concur in part and dissent in part. Because the witness tampering count in Briggs's indictment misstated an essential element of the crime by substituting the word *may*, for the statutory word *will*, it was fatally defective. The purported witness tampering count did not charge Briggs with any crime. Therefore, I would find that reversal of Briggs's conviction of witness tampering is required under the Sixth Amendment to the United States Constitution and Article 3, Section 26, of the Mississippi Constitution. I agree that Briggs's robbery conviction must be affirmed.

*A. Constitutional Requirements*

¶28. Words do matter in indictments, perhaps more so than in most other legal pleadings. The Sixth Amendment to the United States Constitution provides that "the accused shall enjoy the right . . . to be informed of the nature and cause of the accusation." U.S. Const. amend. VI. Under the Mississippi Constitution, "the accused shall have a right . . . to demand

10

the nature and cause of the accusation." Miss. Const. art. 3, § 26. "An indictment must contain (1) the essential elements of the offense charged, (2) sufficient facts to fairly inform the defendant of the charge against which he must defend, and (3) sufficient facts to enable him to plead double jeopardy in the event of a future prosecution for the same offense." *Gilmer v. State*, 955 So. 2d 829, 836-37 (Miss. 2007). "An indictment which fails to allege all essential elements of a crime runs afoul of our constitutions and is void." *Thomas v. State*, 126 So. 3d 877, 879 (Miss. 2013). Because such an indictment is void and legally inoperative, there is no need for a showing of prejudice to the defense. If an indictment misstates the essential elements of the crime, an appellate challenge to the indictment is never procedurally barred, but is subject to *de novo* review under our longstanding precedent. *Gilmer*, 955 So. 2d at 836.

¶29. Article 1, Section 1, of the Mississippi Constitution provides for the separate magistracies of the three governmental departments: legislative, judicial, and executive. Miss. Const. art. 1, § 1. The legislative powers are vested in the legislature. Miss. Const. art. 4 § 33. The legislative power includes the authority to declare and define those acts that constitute crimes. *State ex. rel. Dist. Attorney v. Winslow*, 208 Miss. 753, 761, 45 So. 2d 574, 576 (1950). When the prosecutor – a member of the executive branch – initiates a criminal prosecution via a grand jury, the language of the indictment must include the language of the statute that defines the crime being charged. *Warren v. State*, 187 So. 3d 616, 622 (Miss. 2016). If an indictment does not track the statutory language and instead omits or misstates one or more of the crime's essential elements, it effectively charges no

11

crime, and the indictment must be dismissed. ***Thomas***, 126 So. 3d at 879-80. Thus, the drafter of an indictment may not constitutionally attempt to broaden the reach of a criminal statute by substituting language that lightens the evidentiary burden of the prosecution. "[T]he rule is . . . that whatever sense of detestation the court may entertain towards a party upon the facts, courts nevertheless may not impose punishment upon one not within the strict letter of the law." ***Winslow***, 208 Miss. at 760, 45 So. 2d at 575.

*B. The witness tampering count of Briggs's indictment did not charge him with a crime.*

¶30.    Count II of Briggs's indictment purported to charge him with witness tampering under Mississippi Code Section 97-9-115. That statute defines the crime of witness tampering as follows:

> (1) A person commits the crime of tampering with a witness if he intentionally or knowingly attempts to induce a witness or a person he believes *will* be called as a witness in any official proceeding to:
> (a) Testify falsely or unlawfully withhold testimony; or
> (b) Absent himself from any official proceeding to which he has been legally summoned.

Miss. Code Ann. § 97-9-115 (Rev. 2014) (emphasis added). *Official proceeding* is defined as "any proceeding heard before any legislative, judicial, administrative, or other government agency or official authorized to hear evidence under oath."

¶31.    The charging language of Count II of Briggs's indictment is as follows:

> And, based upon a series of acts connected together and constituting parts of a common scheme and plan, Trevioun Lamount Cornelius Briggs, on or about the 18th day of December, 2013, in the county aforesaid and within the jurisdiction of the Court, did willfully, feloniously, intentionally and knowingly attempt to induce a witness or a person he believed *may* be called as a witness against him, to-wit: Defendant, while incarcerated, made contact

via telephone with a person whom he then requested she attempt to coerce another person into deceitfully providing Defendant with with [sic] an alibi, in violation of Miss. Code Ann. § 97-9-115 (1972, as amended).

(Emphasis added.)[3]

¶32.   Briggs contends that the witness tampering statute criminalizes the attempted inducement of false testimony from someone the defendant believes *will* be called as a witness, not someone the defendant believes *may* be called as a witness. Briggs argues that the language of his indictment did not track the language of the statute because it substituted the word *may* for the word *will*. Briggs also argues that, because the words *may* and *will* have different meanings, the substitution was improper and rendered his indictment fatally defective. While Justice Beam's majority provides much general discussion about the language of Section 97-9-115, it offers scant analysis of the issue raised by Briggs: whether there is any meaningful difference between using the word *may* in place of the word *will* in an indictment for witness tampering. With respect, that issue is of paramount importance to our resolution of this case and it is dispositive. Accordingly, I address it as follows.

¶33.   An indictment properly sets forth the essential elements of the crime sought to be charged when the indictment's language tracks (follows) the language of the statute. *Warren*, 187 So. 3d at 622. An indictment need not employ the exact descriptive language of the statute. *Gilmer*, 955 So. 2d at 837 (quoting *Price v. State*, 898 So. 2d 641, 654 (Miss. 2005)). But for an indictment sufficiently to set forth the essential elements of the crime, it must use

---

[3] Though not raised, I note that, for double jeopardy purposes, Briggs's indictment should have identified the person or persons whose false testimony Briggs was charged with having attempted to induce. *See Goforth v. State*, 70 So. 3d 174, 189-90 (Miss. 2011).

13

"equivalent words of substantially the same meaning" as the words in the statute. *Id.* (quoting *Price*, 898 So. 2d at 654); *see also* **Harrington v. State**, 54 Miss. 490, 493 (1877) (providing that "it is essential that either the same words, or words of equivalent meaning, and substantially synonymous, should be used"). This Court has held that "[w]here the language used in the indictment is sufficiently specific to give notice of the act made unlawful, and exclusive enough to prevent[] its application to other acts, it is sufficient." **Gilmer**, 955 So. 2d at 837 (quoting **Price**, 898 So. 2d at 654).[4]

¶34.    Briggs's indictment charged him with attempting to induce a witness or a person he believed *may* be called as a witness to provide him a false alibi by means of coercion and deceit. The witness tampering statute proscribes intentionally or knowingly attempting to induce false testimony from a witness or a person the defendant believes *will* be called as a witness. Only if it could be said that the words *may* and *will* have equivalent meaning and are substantially synonymous terms could we find that the witness tampering charge was adequately worded. But, as this Court has recognized, the two words have vastly different meanings. A bedrock principle of this Court's law of statutory interpretation is that the word *may* is a permissive term, and the word *shall* is mandatory. **Tunica Cty. v. Hampton Co. Nat'l Surety LLC**, 27 So. 3d 1128, 1134 (Miss. 2009). *May* is "used to indicate possibility or probability." *May*, Webster's New Collegiate Dictionary (9th ed. 1983). It means "may or may not." **Kipp Flores Architects, L.L.C. v. Mid-Continent Cas. Co.**, 852 F.3d 405, 410

---

[4] For example, here the charging language would have been compliant with the statute had it used the word "would" instead of "will." "Would," in the context of the statutory language, has substantially the same meaning as "will."

(5th Cir. 2017). On the other hand, *will* is "used to express inevitability." *Will*, Webster's New Collegiate Dictionary (9th ed. 1983). The words *may* and *will* are *not* substantially synonymous words of equivalent meaning, and they *cannot* be used interchangeably. Like *shall*, *will* is mandatory. Thus, a defendant is guilty of witness tampering if the defendant intentionally or knowingly attempts to induce false testimony from a witness or a person the defendant believes, *inevitably*, regardless of whether such belief is well founded or even realistic, will be called as a witness by the State or by the defendant.[5] A person cannot be guilty of witness tampering for attempting to induce false testimony from someone he believes *may or may not* be called as a witness. Therefore, Briggs's indictment was rendered defective when its drafter chose to employ a word that does not appear in the statute and has a meaning that is different from the operative word that does appear in the statute.

¶35.     In short, Briggs is accused of trying to dispatch a second person to talk a third person into providing Briggs a false alibi. For that to be a crime under Section 97-9-115, the statute the State selected as the legal vehicle for its prosecution of Briggs, it was necessary that Briggs be proven to have believed that the third person *will* or *would* be called as a witness, not that she *may* or *might* be called as a witness. Had the indictment tracked the statutory language, the State could have undertaken to adduce circumstantial evidence that Briggs himself intended to call the third person as a witness, thus *believing* the person will or would

---

[5] I note that Briggs's indictment charged that he intentionally or knowingly attempted to "induce a witness or a person he believed may be called as a witness *against him*." Thus, the State imposed upon itself the obligation of proving something not included in the statute: that Briggs believed the person would be called to testify against him by the State, not by the defense. *Lee v. State*, 944 So. 2d 35, 38-39 (Miss. 2006) (citing *Richmond v. State*, 751 So. 2d 1038, 1046 (Miss. 1999)).

15

be called as a witness. The statute does not specify or require any particular basis or means for the unlawful inducement. But Section 97-9-115 does require the State to prove that, for whatever reason, the accused believed, subjectively, that the target of his attempted inducement *will* be called as a witness. Although the defendant's belief may be ill founded, altogether misplaced, or completely wrong, nevertheless, the statute demands that the accused, to be guilty of witness tampering, believe that the person he attempts to induce ultimately will be called as a witness, either by the defendant or by the defendant's adversary – the State.[6]

¶36.    The Court of Appeals held that, because Briggs requested that those he contacted provide an alibi to the investigating authorities, he essentially was asking them to be witnesses at his trial and to provide false testimony. The Court of Appeals opined that, under those circumstances, Briggs necessarily believed that these persons would have been called as witnesses at his trial. In essence, the Court of Appeals found that Briggs was attempting to "create" a false trial witness. Therefore, the Court of Appeals held, it made no difference that the indictment erroneously substituted *may* for *will*. With respect to my colleagues in

---

[6] Justice Beam's majority interprets my position to be that "the offense would not be consummated until the putative witness appeared at the official proceeding and gave false testimony." Maj. Op. at ¶22. With respect for Justice Beam's majority, the distinction between *may* and *will* is critical not because it matters whether the person from whom the defendant attempted to induce false testimony eventually is called as a witness, but because there is a meaningful distinction between the defendant's harboring a belief that someone *will* be called as a witness and his harboring a belief that someone *may* be called as a witness. I wholeheartedly agree with the conclusion of Justice Beam's majority that the statute can be violated even if the defendant's belief that the person *will* be called as a witness is wrong or misplaced.

16

Justice Beam's majority, who approve this analysis, the Court of Appeals' reasoning mistakenly ignores the constitutional requirement that an indictment must set forth the essential elements of the crime. The Court of Appeals' apparent belief that Briggs's conduct could be construed as being within the actual statutory language is not determinative of the adequacy of the indictment. Because the witness tampering count of Briggs's indictment erroneously substituted the word *may* for the word *will* – a word that has a different meaning – the indictment failed to afford Briggs the constitutionally required notice of the crime charged. As Count II is written, Briggs was given notice of nothing more than an accusation that does not amount to a crime. The question of whether the State could have adduced sufficient evidence to secure a conviction had the witness tampering count properly set forth the essential elements of the crime is irrelevant to our resolution of the dilemma created by poor draftsmanship.

¶37. Further, I respectfully note that Justice Beam's majority, citing out-of-state case law, mistakenly bases much of its analysis on attempting to resolve the irrelevant question of whether Section 97-9-115 requires an official proceeding to have commenced prior to the defendant's attempt to induce false testimony. The statutory language proscribes the attempted inducement of false testimony from a person whom the defendant believes will be called as a witness in an official proceeding. Miss. Code Ann. § 97-9-115(a) (Rev. 2014). Whether the statute is violated or not depends on what the defendant believed at the time of the attempted inducement of false testimony,[7] not on whether an official proceeding actually

---

[7] The statute is violated when a person intentionally or knowingly attempts to induce someone he believes will be called as a witness in any official proceeding to testify falsely.

17

had commenced. With respect for those comprising Justice Beam's majority, its analysis obscures the real issue in this case by focusing on whether Section 97-9-115 requires an official proceeding to have commenced at the time of the attempted inducement of false testimony.

¶38.    Because my analysis rests upon a simple comparison of the language of the indictment to the language of the statute; and, since they are patently at odds with each other, I find no need to comb the annals of American law for other judicial interpretations of similar statutes. I would not hold that the witness tampering statute requires that an official proceeding must have begun at the time of the attempted inducement of false testimony. Rather, my analysis of the case before us is based upon the inescapable fact that the words *may* and *will* have different meanings; thus, Briggs's indictment failed to place him on notice of an essential element of the crime.

¶39.    I also observe that the State's prosecutorial endeavor would have been far better served if, in drafting the indictment, it simply had utilized the statutory language, instead of attempting to improve on it. The alternative verb selected by the State – *may* – materially deviated from the meaning of the statute. *May* suggests a contingency. *Will*, on the other hand, bespeaks a thing certain – in this case, a particular belief on the part of the accused, even if mistaken. The legislature, the sole entity in our state government possessed of the authority to select statutory language, did not choose the word *may* when it drafted this

Miss. Code Ann. § 97-9-115(a). Logically, one person may believe, subjectively, that another will be called as a witness in an official proceeding even if no such proceeding has been commenced or scheduled.

18

statute.[8] Even though the prosecutor – a functionary in the executive branch of state government – did choose the word *may*, reasoning, perhaps, that this substitution would make the charge easier to prove – the charging language of the indictment fell short of charging Briggs with a crime known to Mississippi law. The prosecutor's innovation upon the statute's plain language renders the witness tampering count of Briggs's indictment wholly impotent as a criminal charge.

¶40.    Finally, I am compelled to underscore that this Court's disposition of this case strongly implicates separation of powers. Section 97-9-115 appears, in all respects, to be a valid statute. This Court cannot expand a statute's meaning beyond its plain, unambiguous language. ***Green v. State***, 183 So. 3d 28, 33 (Miss. 2016). Even if Section 97-9-115 were ambiguous, because it is a penal statute, we would be constrained to construe it strictly against the State. ***Id.*** at 34. A prosecutor, as a member of the executive branch, has no authority to expand the statutory definition of a crime by substituting words he or she thinks would be more expedient to securing a conviction. The grand jurors who voted to indict Briggs for witness tampering were not well served by such creativity. Only the legislature is empowered to amend a statute; neither the executive nor the judicial branch of our government may do so. To approve the executive branch's attempted statutory amendment, as Justice Beam's majority does, is a reckless plunge into judicial activism in which I respectfully decline to participate.

---

[8] Interestingly, in the recent amendment of the witness tampering statute, the legislature did not alter its use of the operative word *will*. Neither should we, as it is not within this Court's authority so to do.

19

¶41.   Because Briggs's indictment misstated an essential element of the crime of witness tampering by substituting the word *may* for the word *will*, his indictment for the witness tampering count was fatally defective. Therefore, Briggs was deprived of his federal and state constitutional rights to notice of the charge against him. I would affirm his conviction of robbery, reverse and render his conviction for witness tampering, and dismiss the witness tampering count of his indictment.

**DICKINSON, P.J., KING AND COLEMAN, JJ., JOIN THIS OPINION.**